UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISRAEL BUSTAMONTE,<br><br>           Plaintiff,<br><br>   v.<br><br>T. CASTILLON, et al.,<br><br>           Defendants. | Case No. 22-cv-04725-VKD<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A; GRANTING LEAVE TO AMEND** |

Pro se plaintiff Israel Bustamonte filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against a correctional officer and medical staff at the Salinas Valley State Prison ("SVSP"), where he is currently incarcerated. Mr. Bustamonte's motion for leave to proceed *in forma pauperis* will be addressed in a separate order. Dkt. No. 5.

For the reasons discussed below, the Court concludes that the allegations are sufficient to state an excessive force claim and deliberate indifference to medical needs claim against several defendants, but there are insufficient facts to support a claim against two of the named defendants. Mr. Bustamonte may amend his complaint to correct this deficiency as discussed below.

**I.     BACKGROUND**

Mr. Bustamonte is currently confined at SVSP. Dkt. No. 1 ¶ 1. He brings this action against Correctional Officer T. Castillon for injuries he suffered during a "riot/melee" among inmates on September 28, 2021, in one of the yards at SVSP. Dkt. No. 1 ¶¶ 10, 17-21. Mr. Bustamonte also sues SVSP medical staff for their deliberate indifference to his medical needs in treating those injuries. *Id.* ¶¶ 1, 11, 34-48. With respect to his medical claim, Mr. Bustamonte names the following as defendants: C. Bermudez (RN), F. Ssempebwa (RN), Phuc Le (RN), F.

Montegrande (RN), K. Johnson (RN), L. Muriith (RN), and Dr. Michael Moller. *Id.* ¶¶ 7, 11, 12.

Mr. Bustamonte alleges that as soon as the riot broke out, he attempted to move away from the area where the riot was taking place. *Id.* ¶¶ 18-19. Officers on the scene discharged pepper smoke which caused him to cough and impaired his vision. *Id.* ¶ 19. He also heard loud bangs from the building tower officers discharging their weapons. *Id.* When Mr. Bustamonte heard an officer close by yell, "get down," he turned his back to the officer to comply while keeping both arms up in the air. *Id.* ¶ 20. Mr. Bustamonte claims that he then "out of nowhere lost conscious[ness] and all went dark," and that the next thing he recalls is being placed in the back of an ambulance. *Id.* ¶ 21. Mr. Bustamonte alleges that Officer Castillon, who was the gun tower officer for D-Yard 5 block at the time, deliberately shot him on the right side of his face with a rubber bullet from the tower window, which was approximately 30 to 40 feet away. *Id.; see also id.* ¶ 30. While he was restraining Mr. Bustamonte with a zip-tie, an unidentified officer noticed the wound on Mr. Bustamonte's face and called for medical attention. *Id.* ¶ 23. Defendants Nurse Bermudez and Nurse Ssempebwa arrived. *Id.* Mr. Bustamonte says that it was only after several inmates yelled at the officers and nurses that he needed to be taken to the hospital that Nurse Bermudez had him taken to SVSP's Critical Treatment Center. *Id.* ¶ 24. Mr. Bustamonte's head injury required treatment at the hospital where it was determined from a CT scan and X-rays that Mr. Bustamonte had suffered bruising, several fractures, and a laceration. *Id.* ¶¶ 26-31. He was transported back to SVSP after several hours of observation to ensure that he did not have a severe concussion and was stable. *Id.* ¶¶ 31-32.

Mr. Bustamonte claims he experienced severe pain, vomiting, dizziness, and disorientation in the days that followed. *Id.* ¶ 33. On October 1, 2021, he saw defendant Nurse Montegrande for a follow-up. *Id.* ¶ 34. Mr. Bustamonte informed Nurse Montegrande that he was in severe pain, it hurt to chew food and swallow water, and that the pain medication was not sufficient. *Id.* ¶ 35. Nurse Montegrande informed him that he would receive surgery soon, but that he would not be given more drugs (other than the "T-3s" already prescribed) because of Mr. Bustamonte's history of drug use. *Id.* ¶ 36. He was also informed that a "soft food diet" had been ordered. *Id.* ¶ 37.

On October 4, 2021, Mr. Bustamonte saw defendant Nurse Ssempebwa. *Id.* ¶ 38. Mr.

Bustamonte informed Nurse Ssempebwa that he had severe pain on the right side of his face, he could not chew regular food, and that he had not yet received the "soft food diet"; he also asked about his scheduled surgery. *Id.* Nurse Ssempebwa replied that he could do nothing about the food diet, that he would not provide "a fix to druggies," and that surgery was on schedule. *Id.* ¶ 39.

On October 5, 2021, Mr. Bustamonte saw defendant Nurse Phuc Le, whom he informed that he was in severe pain, the vision in his right eye was blurry, and that he had lost some hearing in his right ear. *Id.* ¶ 41. He also informed Nurse Le that he had not eaten in the last few days and had not yet received his soft food diet. *Id.* ¶ 42. Nurse Le informed him that the soft food order was there and that he should be getting his surgery within a couple of days. *Id.* Mr. Bustamonte was sent back to his cell in severe pain.

On October 6, 2021, Mr. Bustamonte saw defendant Nurse Muriith. *Id.* ¶ 44. He informed Nurse Muriith that he had not eaten a proper meal in over a week and that he was feeling dizzy and disoriented; he requested a soft food diet meal. *Id.* Nurse Muriith informed him that he was there to perform tests prior to surgery, and that any other medical issues had to be taken up with his primary care provider ("PCP"). *Id.* Mr. Bustamonte was sent back to his cell still in severe pain and worsening condition. *Id.* ¶ 45.

A few days later, Mr. Bustamonte saw his PCP, defendant Dr. Michael Moller. *Id.* ¶ 46. Mr. Bustamonte informed Dr. Moller that he was in severe pain, losing vision and hearing on his right side, and had dizzy periods and severe headaches. *Id.* He also informed Dr. Moller that he had not yet received a soft food diet and been eating two slices of beard soaked in water each day. *Id.* Dr. Moller informed him that a soft food diet had been recommended, that he would approve the surgery; after that, they would see whether other medical procedures were needed. *Id.* ¶ 47. Mr. Bustamonte was sent back to his cell. *Id.*

Mr. Bustamonte alleges that he never received surgery for his severe injuries and never received a soft food diet. *Id.* at ¶ 48. He claims he continues to endure severe pain whenever he eats and suffers from other medical problems because he never received proper medical treatment for his severe injuries. *Id.*

3

## II. STANDARD OF REVIEW

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). A court may dismiss a case filed without the payment of the filing fee whenever it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In conducting its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Additionally, a complaint must include facts that are "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only plausible claims for relief will survive a motion to dismiss. *Id.* at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Id*. at 678.

## III. DISCUSSION

Mr. Bustamonte contends that his rights under the Eighth Amendment were violated due to the excessive force used by Officer Castillon and the deliberate indifference to his serious medical needs by the medical staff. The Court considers these claims below.

### A. Excessive Force

Whenever prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Mr. Bustamonte alleges that Officer Castillon deliberately shot him in the face, causing severe injury, even though Mr. Bustamonte was in the process of complying with orders to "get down" and presented no threat at the time. *See supra* at 2; Dkt. No. 1 at ¶ 56. These allegations are sufficient to state an excessive force claim against Officer Castillon.

### B. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* at 1059 (citing *Estelle*, 429 U.S. at 104). With regard to the second prong, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* Liberally construed, Mr. Bustamonte's allegations are sufficient to state an Eighth Amendment deliberate indifference

1   claim against Nurse Ssempebwa, Nurse Le, Nurse Montegrande, Nurse Muriith, and Dr. Michael
2   Moller based on their knowledge that Mr. Bustamonte was in severe pain and unable to eat and
3   their failure to take reasonable steps to abate the risk of harm.
4         However, there are insufficient claims to state a deliberate indifference claim against Nurse
5   Bermudez and Nurse Johnson.  The only factual allegations involving Nurse Bermudez are that
6   she was one of the two nurses who first arrived to provide medical treatment for Mr. Bustamonte's
7   head injury, and that she had him taken to the Critical Treatment Center.  *See supra* at 2.  These
8   allegations are insufficient to indicate that she failed to take reasonable steps to abate a risk of
9   serious harm.  Furthermore, other than listing Nurse Johnson as among the liable medical staff,
10  Mr. Bustamonte makes no specific factual allegations against Nurse Johnson anywhere in the
11  complaint; there is no description of any interaction he had with Nurse Johnson or how this
12  defendant was involved in his medical care.
13        The Court grants Mr. Bustamonte leave to amend to attempt to state sufficient facts to
14  show that Nurse Bermudez and Nurse Johnson are responsible for deliberate indifference to Mr.
15  Bustamonte's serious medical needs.

### C.    Other Deficiencies

17  In preparing an amended complaint, Mr. Bustamonte should also address the following
18  problems with his pleading.  First, Mr. Bustamonte states at the beginning of the complaint that he
19  is filing a claim for "inju[n]ction [*sic*] relief and declaratory relief."  Dkt. No. 1 at ¶ 1.  However,
20  he does not describe what type of injunctive relief he seeks in the prayer for relief at the end of the
21  complaint.  *Id.* at ¶ 79.  If Mr. Bustamonte seeks specific injunctive relief, he should include it in
22  the amended complaint.
23        Second, Mr. Bustamonte states that each individual defendant was "acting in their official
24  capacity and course of their employment."  *Id.* at ¶ 14.  He also states that each of them "are also
25  sued in their individual capacities for the claims allege[d] in this here complaint."  *Id.* at ¶ 16.  As
26  a general matter, an action brough against a law enforcement officer in his official capacity seeks
27  to hold the entity of which the officer is an agent liable, rather than the officer himself.  *Kentucky*
28  *v. Graham,* 473 U.S. 159, 165-66 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S.

United States District Court
Northern District of California

1  658, 690 n. 55 (1978)).  For this reason, an officer sued in his official capacity is entitled to invoke

2  sovereign immunity just as the entity may. *Id.* at 167.  By contrast, an action brought against an

3  officer in his individual capacity seeks to impose personal liability on the officer for wrongful

4  actions he takes "under color of state law" and in the course of his official duties. *Id.* at 165.  An

5  officer sued in his individual capacity cannot claim sovereign immunity from suit. *Alden v.*

6  *Maine,* 527 U.S. 706, 757 (1999).  To the extent that Mr. Bustamonte seeks to assert his claim for

7  money damages against defendants in their official capacities, and not their individual capacities,

8  such claims will be subject to dismissal. *See Nesbit v. Dep't of Pub. Safety*, Nos. 06-16428, 06-

9  16623, 283 Fed. App'x. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition)

10 (concluding that the district court properly dismissed prisoners' claims against defendants acting

11 in their official capacities).  Mr. Bustamonte should therefore clarify whether he is seeking to

12 impose liability on the named defendants in their individual or official capacities in preparing an

13 amended complaint.

### IV.    CONCLUSION

15 After screening the complaint pursuant to 28 U.S.C. § 1915A, the Court finds that the

16 claim of deliberate indifference against defendants Bermudez and Johnson are deficiently plead.

17 Furthermore, Mr. Bustamonte should also amend his request for injunctive relief and clarify on

18 what basis he is suing Defendants, *i.e.*, whether solely in their official or individual capacities.

19 Mr. Bustamonte may file an amended complaint to attempt to correct the deficiencies

20 discussed above by no later than **January 31, 2023**.  The amended complaint must include the

21 caption and civil case number used in this order, Case No. C 22-cv-04725 VKD, and the words

22 "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Mr.

23 Bustamonte must answer all the questions on the form in order for the action to proceed.

24 Mr. Bustamonte is advised that the amended complaint will supersede the original

25 complaint, the latter being treated thereafter as non-existent. *Ramirez v. Cnty. of San Bernardino*,

26 806 F.3d 1002, 1008 (9th Cir. 2015).  Consequently, claims not included in an amended complaint

27 are no longer claims and defendants not named in an amended complaint are no longer defendants.

28 *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

If Mr. Bustamonte fails to file an amended complaint in time, or the amended complaint fails to cure all defects described above, the Court may issue an order reassigning the case to a district judge with a recommendation that the complaint be dismissed in whole or in part for failure to state a cognizable claim.

The Clerk of the Court shall include two copies of the Court's form complaint with a copy of this order to Mr. Bustamonte.

**IT IS SO ORDERED.**

Dated: December 30, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge