UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ISRAEL BUSTAMONTE, <br><br> Plaintiff, <br><br> v. <br><br> T. CASTILLON, et al., <br><br> Defendants. | Case No. 22-cv-04725-VKD (PR) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 70 |

Pro se plaintiff Israel Bustamonte, a state prisoner, asserts claims under 42 U.S.C. § 1983 against defendants T. Castillon, F. Ssempebwa, P. Le, F. Montegrande, L. Muriithi, and Dr. Michael Moeller[1] for use of excessive force and deliberate indifference to serious medical needs at Salinas Valley State Prison ("SVSP"). Dkt. No. 11. Mr. Bustamonte seeks declaratory relief and damages. *Id.* at 23-24. The Court found the amended complaint (Dkt. No. 11), liberally construed, stated cognizable claims and ordered service on named defendants. Dkt. No. 14 at 5-6. All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 4, 24, 38, 84.

Defendants Castillon, Ssempebwa, Le, and Muriithi (for purposes of this motion, "Defendants") move for summary judgment. Dkt. Nos. 70, 70-1. Mr. Bustamonte did not file an opposition to the motion. *See* Dkt. No. 77. However, the amended complaint is verified and therefore may be treated as an opposing affidavit.[2] Dkt. No. 11 at 23.

---

[1] Defendant Dr. Moeller filed a separate motion for summary judgment which was granted. Dkt. Nos. 54, 76.

[2] The Court may rely on statements of fact in the amended complaint that Mr. Bustamonte is competent to assert as if they were made by declaration. *Schroeder v. McDonald*, 55 F.3d 545, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing affidavit under Rule 56 [if

1    The Court finds this matter suitable for resolution without oral argument. *See* Civil L.R. 7-1(b). For the reasons explained below, the Court grants Defendants' motion for summary judgment.

## I.     BACKGROUND

The following facts are undisputed unless otherwise noted.

### A.     Parties

Mr. Bustamonte is a state prisoner currently incarcerated at SVSP in Soledad, California, where the underlying events at issue in this action took place.

P. Le is and was a registered nurse at SVSP at the time of the underlying events in this action. Dkt. No. 11 at 3; Dkt. No. 70-2 ¶¶ 2, 8-9 (Le Decl.). L. Muriithi is and was a registered nurse at SVSP at the time of the underlying events. Dkt. No. 11 at 3; Dkt. No. 70-3 ¶¶ 2, 5 (Muriithi Decl.). F. Ssempebwa is and was a registered nurse at SVSP at the time of the underlying events. Dkt. No. 11; Dkt. No. 70-5 at ¶¶ 2, 8 (Ssempebwa Decl.).

T. Castillon is and was a correctional officer at SVSP at the time of the underlying events in this action. Dkt. No. 11 at 3; Dkt. No. 70-6 ¶ 1 (Castillon Decl.).

Mr. Bustamonte alleges that F. Montegrande was a nurse at SVSP at the time of the underlying events in this action; however, there is some indication in the record that she was a physician, not a nurse. Dkt. No. 11 at 5, 11-12; *see also* Dkt. No. 70-2 ¶¶ 5, 10-16 (Le Decl.). F. Montegrande only recently appeared in this action, *see* Dkt. No. 80, and she has not joined in Defendants' summary judgment motion.

### B.     Use of Force Incident

According to the verified amended complaint, on September 28, 2021, at approximately 10:50 a.m., Mr. Bustamonte learned from another SVSP inmate that "something is going to go down right now between the Blacks and the Mexicans," at which point a "riot/melee" broke out on the D-upper yard basketball court in the prison. Dkt. No. 11 ¶ 20. Mr. Bustamonte states that he attempted to walk away from the riot while prison officials were ordering inmates to "get down"

---

it is] based on personal knowledge and set[s] forth specific facts admissible in evidence.") (internal citation omitted).

2

1  and throwing pepper smoke grenades. *Id.* ¶ 21. He states that the pepper smoke was thick and
2  obscured his vision, and that he heard loud bangs from the "building towers' officers discharging
3  their state issued 40 mm gun." *Id.* ¶ 22.

4        Officer Castillon attests that at about 11:00 a.m. on the same date he heard a report of a
5  Code 2 Riot over his institutional radio. Dkt. No. 70-6 ¶ 2. Officer Castillon was the control
6  booth operator in Facility D, Building 5 at the time. *Id.* He responded to the Code 2 Riot call by
7  moving to the control booth yard window and observed multiple inmates striking each other with
8  their fists. *Id.* ¶¶ 3-4. Officer Castillon gave verbal commands for the combative inmates to "get
9  down," but they continued fighting each other. *Id.* ¶ 5. Office Castillon says he assessed that the
10 rioting inmates would be seriously injured or killed if they continued to fight and believed, based
11 on his training and experience, that it was reasonable under these circumstances to use the less-
12 than-lethal 40-millimeter-direct-impact launcher to stop the rioting. *Id.* ¶¶ 6-7. The 40 mm
13 launcher is a "less-than-lethal" weapon designed to be fired at violent subjects in crowd control
14 situations, such as the one before Officer Castillon at that time, "for disabling inmates engaged in
15 physical confrontations when they refuse to comply with orders to stop and are endangering other
16 inmates or staff." *Id.* ¶ 8.

17       From approximately 80 feet away, Officer Castillon fired a foam round from his 40 mm
18 launcher towards one inmate's lower left thigh to gain compliance with his order to get down and
19 to minimize the risk of inmate and staff serious injury or death. *Id.* ¶ 9. He did not see if the
20 round struck his intended target. *Id.* ¶ 10. All of the inmates continued to fight. *Id.*

21       Officer Castillon reloaded his launcher and monitored the rioting inmates. He again
22 ordered the combative inmates to get down; they refused and continued to fight. *Id.* ¶ 11. He
23 fired another round from approximately 80 feet away, aiming at a second inmate's lower right
24 thigh. *Id.* ¶ 12. He again did not see if the round struck his intended target; the inmates continued
25 to fight. *Id.* ¶ 13.

26       Officer Castillon repeated this process numerous times to gain compliance with his
27 commands, ultimately firing seven rounds from his launcher. *Id.* ¶ 14. According to Officer
28 Castillon, before firing each round he ordered the combative inmates to get down and observed

their refusal to comply with his order. *Id.* ¶ 15. He aimed each round at an authorized target zone, either the legs or buttocks, avoiding the groin, or on the ground in front of the target. *Id.* ¶ 16. According to Officer Castillon, he did not see if any projectiles struck his intended targets. *Id.* ¶ 17. Officer Castillon observed responding ground staff deploy multiple OC [pepper] blast grenades that resulted in combative inmates complying with orders to assume a prone position. *Id.* ¶ 18. After observing inmates' compliance, Officer Castillon did not use any additional force. *Id.* ¶ 19.

According to the verified amended complaint, when Mr. Bustamonte heard an officer close by yell, "get down," he turned his back to the officer to comply while keeping both arms up in the air. Dkt. No. 11 ¶ 23. He then states that "out of nowhere [he] lost conscious[ness] and all went dark." *Id.* ¶ 24. The next thing he recalls is being placed in the back of an ambulance. *Id.* Mr. Bustamonte states that Officer Castillon, "deliberately and without a reason, shot him on the right side of his head (face) with a state issue[d] 40mm gun (block gun)" from "approximately 30 to 40 feet away." *Id.*; *see also id.* ¶ 57. An unidentified officer noticed the wound on Mr. Bustamonte's face and called for medical attention. *Id.* ¶ 26.

### C.   Medical Treatment

According to the verified amended complaint, after being assessed at the prison's "TTA" (triage and treatment area), Mr. Bustamonte was transferred to Natividad Medical Center for medical treatment. Dkt. No. 11 ¶¶ 28-29. He received a CT scan and x-rays which showed he suffered head injuries, including bruising, several fractures, and a laceration. *Id.* ¶¶ 32-34; *see also* Dkt. No. 70-4 at 23, Ex. 3 (Nichols Decl.). After several hours at the medical center, he was transported back to SVSP. Dkt. No. 11 ¶ 34. In the days that followed, Mr. Bustamonte experienced severe pain, vomiting, dizziness, and disorientation. *Id.* ¶ 36.

The parties dispute several facts regarding the follow-up treatment Mr. Bustamonte received for his injuries at SVSP, including whether Mr. Bustamonte received adequate pain medication, whether he received a prescribed soft food diet, whether he timely received necessary surgery or whether surgery was delayed because he failed to comply with pre-surgery procedures, and whether he was provided or refused a consultation with an ENT specialist.

4

### D. Prison Administrative Remedies

In his verified amended complaint, Mr. Bustamonte asserts that he exhausted administrative remedies for the claims in this action by filing an inmate grievance under Log No. 180867 and a health care grievance (Form 602 HC) under Log No. SVSP HC 21002095. Dkt. No. 11 at 3. Defendants do not dispute that Mr. Bustamonte exhausted his excessive force claim against Officer Castillon by pursuing the grievance under Log No. 180867. Dkt. No. 81 ¶ 8. Defendants submit a copy of Mr. Bustamonte's health care grievance, Log No. SVSP HC 21002095, with their motion. Dkt. No. 70-4 ¶¶ 7-8, Ex. 3 (Nichols Decl.).

Mr. Bustamonte filed a health care grievance, Log No. SVSP HC 21002095, on December 30, 2021. Dkt. No. 70-4 at 17. In the grievance, Mr. Bustamonte describes the September 28, 2021 incident and being transferred to Natividad Medical Center. *Id.* He describes Dr. Moeller recommending a referral to a specialist and surgery within five days, stitches to be removed, and a soft food diet. *Id.* at 19. Mr. Bustamonte states that he requested a follow-up several times, he was in severe pain, he received no soft food diet, and the stitches were not removed for over three weeks. *Id.* He also claims that he had yet to receive surgery or be seen by a specialist. *Id.* He mentions defendants Montegrande, Muriithi, and Ssempebwa accusing him of "just trying to get high" and refusing to provide him with "minimal of medical care" for his severe injuries. *Id.* The grievance does not mention defendant Le. *Id.* Mr. Bustamonte states that he continues to experience pain and suffering due to Defendants' deliberate indifference to his medical needs. *Id.*

On March 1, 2022, SVSP provided an institutional level response which determined that "no intervention" was necessary. *Id.* at 14. The response instructed Mr. Bustamonte that if he was dissatisfied with the response, he could submit his entire health care grievance package for headquarters' level review, which would constitute the final disposition of the grievance and exhaust his administrative remedies. *Id.* at 16. According to Defendants, the Health Care Services Appeal History report indicates that Mr. Bustamonte did not submit grievance Log No. SVSP HC 21002095, or any other grievance, for headquarters' level review. Dkt. No. 70-4 ¶ 14, Ex. 3 (Nichols Decl.).

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See id.* at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

## III. DISCUSSION

Defendants move for summary judgment on the following grounds: (1) Mr. Bustamonte failed to administratively exhaust his remedies as to defendants Ssempebwa, Le, and Muriithi; (2) Officer Castillon did not subject Mr. Bustamonte to excessive force; (3) defendants Ssempebwa, Le, and Muriithi did not act with deliberate indifference to Mr. Bustamonte's medical needs; and (4) Defendants are entitled to qualified immunity. Dkt. No. 70-1 at 7.

Because the undisputed evidence shows that Mr. Bustamonte did not exhaust his administrative remedies and that, on the record presented, Officer Castillon did not use excessive force, as discussed below, the Court does not address Defendants' third and fourth grounds for summary judgment.

### A. Failure to Exhaust re Deliberative Indifference Claim

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id*. at 85.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 84. "Proper exhaustion" requires compliance with prison grievance procedures. *Id.* at 90-91 (footnote omitted); *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). Procedures may vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

Nonexhaustion under § 1997e(a) is an affirmative defense. *Id*. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. Defendants must produce evidence showing failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied. *Id*.

During the period applicable to this action, prisoners incarcerated in the California prison system have the right to administratively grieve and appeal "applied health care policies, decisions, actions, conditions, or omissions that have a material adverse effect on their health or welfare." Cal. Code Regs. tit. 15, § 3999.226(a).[3] First, "[t]he grievant shall complete Section A

---

[3] The regulations regarding inmate health care appeals were renumbered, effective August 6, 2018. Former California Code of Regulations Title 15, sections 3087.1 through 3087.12 were

7

of the CDCR 602 HC and submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b); *see also id.*, § 3999.225(n) (defining HCGO). "The grievant shall document clearly and coherently all information known and available to him or her regarding the issue . . . includ[ing] any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." *Id.*, § 3999.227(g). Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition . . . to HCCAB [Health Care Correspondence and Appeals Branch] . . . within 30 calendar days plus five calendar days for mailing. . . ." Cal. Code Regs. tit. 15, § 3999.229(a); *see also id.*, § 3999.225(l) (defining HCCAB). "The headquarters' level review constitutes the final disposition on a health care grievance and exhausts administrative remedies. . . ." *Id.*, § 3999.230(h); *see also id*. § 3999.226(g) ("Health care grievances are subject to a headquarters' level disposition before administrative remedies are deemed exhausted pursuant to section 3999.230.").

Having carefully reviewed the evidence presented, including the verified amended complaint and Defendants' summary judgment papers, and considering the evidence in the light most favorable to Mr. Bustamonte, the Court finds that it is undisputed that the administrative remedies provided in Title 15 of the California Code of Regulations, sections 3999.226-3999.230, were available to Mr. Bustamonte with respect to the claim at issue in this action. Mr. Bustamonte does not allege that he was effectively prevented from submitting grievances or appeals; he did not submit any contrary evidence on this point; and nothing in the record suggests that he was prevented from submitting grievances or appeals. *See, e.g., Fordley v. Lizarraga,* 18 F.4th 344, 351–52 (9th Cir. 2021) (summarizing circumstances in which administrative remedies are deemed

---

renumbered without substantive change and are now found at sections 3999.226 through 3999.237 of the same title of the California Code of Regulations. This order refers to the regulations in effect at the time of Mr. Bustamonte's claims.

unavailable). Rather, the undisputed record reflects that Mr. Bustamonte did not appeal the adverse institutional level decision to the HCCAB for the headquarters' level review as required by section 3999.229(a). The institutional level response instructed Mr. Bustamonte that he must appeal in order to exhaust the claims, but he did not. *See supra*, sec. I.D.

Accordingly, the Court concludes that there is no genuine dispute of material fact, and that Defendants are entitled to summary judgment on their affirmative defense of failure to exhaust administrative remedies with respect to Mr. Bustamonte's Eighth Amendment claim for deliberate indifference to serious medical needs against defendants Ssempebwa, Le, and Muriithi. Because Mr. Bustamonte's failure to exhaust bars this matter from proceeding on the merits of his deliberate indifference claim, the Court does not address Defendants' other grounds for summary judgment as to that claim. *See Jones*, 549 U.S. at 212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

### B. Excessive Force Claim

"In excessive force cases brought under the Eighth Amendment, the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The Eighth Amendment does not require a specific intent to punish a specific individual. *Robins v. Meecham*, 60 F.3d 1436, 1439 (9th Cir. 1995). Rather, the standard for determining whether excessive force has been used in violation of the Eighth Amendment is "whether the defendants applied force 'maliciously and sadistically for the very purpose of causing harm,'—that is *any* harm." *Id.* at 1441 (emphasis in original). This means, for example, that prison officials violate the Eighth Amendment when they exert excessive force against one inmate which results in injury to another inmate as well. *Id.* at 1439-41.

The Ninth Circuit has adopted a five-factor test to guide the determination of whether a use of force was malicious and sadistic: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013)

9

(quotation omitted). Here, the question on summary judgment is whether a trier of fact, viewing the evidence in the light most favorable to Mr. Bustamonte, could find in his favor that Officer Castillon used excessive force in violation of the Eighth Amendment. *Anderson*, 477 U.S, at 252. As Mr. Bustamonte has filed no opposition to Defendants' motion, in making this assessment, the Court considers the declaration of Officer Castillon describing his actions on September 28, 2021, and the factual statements in Mr. Bustamonte's verified amended complaint. *See supra*, sec. I.B.

*Factor 1*. With respect to the first *Hudson* factor, *i.e.*, the extent of any injury inflicted, it is undisputed that Mr. Bustamonte was injured by the use of force as he was struck in the face by the projectile launched by Officer Castillon. He received injuries that caused pain and required treatment, including surgery. While the parties dispute many aspects of Mr. Bustamonte's subsequent treatment, condition, and prognosis, there appears to be no question that Mr. Bustamonte suffered a significant injury as a result of Officer Castillon's use of force.

*Factor 2*. With respect to the second *Hudson* factor, *i.e.*, the need for the application of force, it is undisputed that a riot broke out among SVSP inmates on the morning of September 28, 2021. It is also undisputed that prison officials attempted to stop the riot by using, among other things, verbal commands, pepper grenades, and a 40 mm launcher. Additionally, it is undisputed that inmates continued to fight or riot even after verbal warnings were provided and some force was used. Finally, it is undisputed that repeated verbal commands were ineffective. On this record, there is no genuine dispute of material fact that there was a need for application of force to attempt to quell the riot, prevent injuries to inmates and staff, and restore order.

*Factor 3*. With respect to the third *Hudson* factor, *i.e.*, the relationship between the need for application of force and the amount of force used, Mr. Bustamonte does not dispute that prison officials, including Officer Castillon, were justified in using force, including the 40 mm launcher, to quell the riot. Officer Castillon attests, without contradiction, that he chose a "less-than-lethal" weapon designed to be fired at subjects in crowd control situations, like the one before him on September 28, 2021. *See supra,* sec. I.B. He further attests that his use of the 40 mm launcher was methodical and deliberate; that he used this force only after giving verbal commands for the combative inmates to "get down" and observing their noncompliance; that he aimed the launcher

towards inmates' lower thigh or buttocks; that he repeated verbal commands to "get down" and observed inmates' noncompliance before firing any additional rounds from the launcher; and that he ceased use of the launcher as soon as he observed compliance. *Id.* While Mr. Bustamonte asserts in the verified amended complaint that Officer Castillon shot him in the face "deliberately and without a reason," this assertion is entirely conclusory and is unsupported by any admissible evidence. Thus, the undisputed evidence shows a reasonable relationship between the need for the application of force and the amount of force applied by Officer Castillon.

*Factor 4.* With respect to the fourth *Hudson* factor, *i.e.*, the threat reasonably perceived by prison officials, the evidence is undisputed that there was a "riot" involving several inmates, possibly including Mr. Bustamonte, which was regarded by prison officials as posing a serious threat to the safety of inmates and the ability of prison officials to maintain order. *See supra,* sec. I.B. It is also undisputed that despite repeated verbal commands to desist and the firing of several rounds from launchers located in the tower, the inmates continued to fight and stopped only after ground staff deployed multiple OC blast grenades. *Id.* On this record, there is no genuine dispute of material fact that prison officials reasonably perceived that the riot posed a serious threat.

*Factor 5.* With respect to the fifth *Hudson* factor, *i.e.*, efforts made to temper the severity of the forceful response, it is undisputed that Officer Castillon first gave verbal commands before using the 40 mm launcher; that he fired one round at a time, as he continued to assess the situation; that he gave repeated verbal commands for the inmates to stop fighting before firing a next round; and that he ceased use of the launcher as soon as he observed compliance. Mr. Bustamonte has produced no admissible evidence to the contrary or otherwise suggesting that Officer Castillon failed to temper the severity of his use of force.

Having carefully reviewed the evidence presented, including the verified amended complaint and Defendants' summary judgment papers, and considering the evidence in the light most favorable to Mr. Bustamonte, the Court concludes that there is insufficient evidence in the record from which a reasonable jury could find that Officer Castillon used force in an effort to maliciously and sadistically cause harm, rather than in a good-faith effort to restore order and prevent further violence among inmates during a riot. Accordingly, the Court finds that Officer

11

Castillon is entitled to summary judgment on the excessive force claim against him.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted. Mr. Bustamonte's claim for deliberate indifference to serious medical needs against defendants Ssempebwa, Le, and Muriithi is dismissed without prejudice for failure to exhaust administrative remedies, and his claim for excessive force against Officer Castillon is dismissed with prejudice. Defendants Castillon, Ssemebwa, Le, and Muriithi shall be terminated from this action.

This order terminates Docket No. 70.

**IT IS SO ORDERED.**

Dated: June 6, 2025

Virginia K. DeMarchi
United States Magistrate Judge

12